IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Christian Barnett, *Guardian ad Litem for W.B. and W.B., minors under the age of 18 years*, | ) ) ) ) | Case No. 8:24-cv-07564-JDA |
| Plaintiff, | ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| Talmadge Reed, Jr.; Reed Ice, Inc., | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on Plaintiff's motions for sanctions for spoliation of evidence, for sanctions for discovery misconduct, and to expedite and on Defendants' motions to amend the Second Amended Scheduling Order, for summary judgment, and to bifurcate.  [Docs. 21; 38; 50; 54; 55; 61.]  The Court begins by providing a brief background related to this case and then addresses the parties' motions.

## BACKGROUND

Plaintiff asserts claims for negligence/gross negligence/recklessness against Defendants based on a May 27, 2024, motor vehicle accident (the "Accident") involving a tractor trailer owned by Defendant Reed Ice, Inc. ("Reed Ice") and driven by Defendant Talmadge Reed ("Reed").  [Doc. 1-1.]  On the date of the Accident, the tractor trailer was towed to Freightliner of Augusta, Georgia.  [Doc. 22-3.]

On July 9, 2024, Plaintiff's counsel sent correspondence to Reed Ice requesting that it preserve all evidence related to the Accident, including the tractor trailer (the "Preservation Letter").  [Doc. 21-1.]  Plaintiff filed this action in the Saluda County Court

of Common Pleas on November 19, 2024 [Doc. 1-1], and Defendants removed it to this Court on December 23, 2024 [Doc. 1].  In May 2025, Plaintiff learned that the tractor trailer had been sent to an auto auction in August 2024 and then repaired and sold to a non-party trucking company in October 2024.  [Doc. 21-9 at 3–4.]  Plaintiff had been attempting to schedule an inspection of the tractor trailer since January 2025 and was informed in June 2025 that the non-party trucking company would need to be notified to secure the inspection.  [Docs. 21-3; 21-4; 21-5; 21-6; 21-7; 21-8; 21-9; 21-11; 21-12; 21-13; 21-14.]

## DISCUSSION

**Plaintiff's Motion for Sanctions for Spoliation of Evidence**

Plaintiff filed the motion for sanctions for spoliation of evidence on July 8, 2025. [Doc. 21.]  Plaintiff asks the Court—based on Reed Ice's failure to preserve the tractor trailer—to strike Defendants' Answer or, alternatively, to issue an adverse-inference jury instruction at trial.  [*Id.*]  The motion has been fully briefed, and the Court held a hearing and allowed supplemental briefing.  [*See* Docs. 22; 28; 30; 31; 33; 35; 37.]  Having reviewed the record in this case and the applicable law, the Court grants in part the motion for spoliation sanctions.  Specifically, the Court will issue an adverse-inference jury instruction at trial and award attorney's fees associated with bringing the motion.

Courts have the inherent power to impose sanctions for spoliation, "but the power is limited to that necessary to redress conduct which abuses the judicial process."[1] *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal quotation marks omitted).  Therefore, the "sanction should be molded to serve the prophylactic, punitive,

---

[1] The decision to impose a spoliation sanction is governed by federal law.  *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004).

and remedial rationales underlying the spoliation doctrine," and a court "must find some degree of fault to impose sanctions." *Id.* (internal quotation marks omitted).

A party may be sanctioned for spoliation if it had a duty to preserve material evidence and willfully engaged in conduct resulting in the loss or destruction of that evidence at a time when it knew, or should have known, that the evidence was relevant in litigation. *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). The party seeking sanctions need not prove bad faith, but it must show that the conduct was intentional. *Id.*; *see also Silvestri*, 271 F.3d at 590 (recognizing that "a court must find some degree of fault to impose sanctions," with the degree of fault impacting the severity of the sanction).

Here, Plaintiff's counsel sent the Preservation Letter to Reed Ice on July 9, 2024. [Doc. 21-1.] Defendants do not dispute that Reed Ice owned the tractor trailer at the time it received the Preservation Letter. [Doc. 35-2 at 3 (172:5–15).] However, Reed did not read past the first page of the Preservation Letter and did not preserve the tractor trailer. [Docs. 28-2 at 1 (180:14–25); 35-2 at 6 (178:13–16).] Accordingly, the Court concludes that Plaintiff has shown that Reed Ice should be sanctioned for spoliation because it had a duty to preserve the truck and chose not to read the Preservation Letter or take any steps to prevent the tractor trailer from being sold before it was inspected. The Court, therefore, turns to the question of what sanction is appropriate.

As stated, Plaintiff has requested that the Court strike Defendants' Answer. [Doc. 21 at 8, 14–15, 16.] A sanction that terminates a case "should be avoided if a lesser sanction will perform the necessary function." *Silvestri*, 271 F.3d at 590. To justify a harsh sanction that terminates a case, a court "must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct

3

was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." *Id.* at 593.

Here, the Court concludes that Reed Ice's spoliation does not warrant the extreme sanction of striking Defendants' Answer. Reed testified that he had never received an evidence preservation letter before and did not fully understand the Preservation Letter when he received it on July 12, 2024. [Doc. 35-2 at 4 (176:7–10), 5 (177:6–10), 9 (183:17–19).] When he received the Preservation Letter, he informed his insurance agent, who told him to "[s]it tight." [*Id.* at 6 (178:4–10).] He did not read past the first page of the letter and instead "depend[ed] on [his] insurance company representative to tell [him] what [he] needed to do." [*Id.* at 7 (181:1–11); *see also* Doc. 28-2 at 1 (180:21–22).] He testified that he did not understand that he and Reed Ice were under a duty to preserve the truck until he later spoke to an attorney. [Doc. 35-2 at 2–3 (171:19–172:4).] Based on this testimony, the Court cannot conclude that Reed Ice's conduct was so egregious as to warrant terminating the case.

Nor can the Court conclude that the prejudice to Plaintiff rises to the level of preventing Plaintiff from developing his case against Defendants. The parties and their experts conducted a joint inspection and download of the tractor trailer on July 15, 2025 [*see* Docs. 22 at 3; 28 at 9]—after the spoliation sanctions motion was filed—but Plaintiff maintains that the inspection "was an exercise in futility" because Plaintiff was deprived of the ability to inspect the tractor trailer "in its post-accident condition" [Doc. 28 at 9]. In support of his position, Plaintiff has provided an affidavit by Kendrick E. Richardson, M.S., P.E. ("Richardson"), an expert in the fields of accident reconstruction and mechanical

engineering. [Docs. 30-1; 36 at 1–2.] Richardson avers that the data downloaded during the vehicle inspection did not produce any data related to the Accident and that, without access to this electronic data or the tractor trailer in its post-accident condition, he is unable "to reconstruct critical aspects of the crash with the precision and certainty that would have been possible had the data and physical evidence been preserved." [Doc. 30-1 ¶¶ 9, 20.] Defendants, on the other hand, have provided an affidavit by Jennifer L. Yaek, Ph.D., P.E. ("Yaek"), an expert in accident reconstruction, mechanical engineering, and biomechanics, particularly as they relate to motor vehicle accidents. [Docs. 35-1; 43.] Yaek avers that lack of electronic data related to the Accident "does not mean the [Accident] cannot be reconstructed in a scientific, commonly-accepted manner with respect to the generally accepted accident reconstruction discipline." [Doc. 35-1 ¶ 5.] Based on these competing representations by the parties' experts, the Court cannot conclude that Plaintiff has been prejudiced to the extent that he cannot develop his case. Accordingly, the Court declines to strike Defendants' Answer, which would result in Defendants' default.

As an alternative sanction, Plaintiff requests "an adverse inference jury instruction at the future trial of this matter, instructing that the jury may infer the missing evidence would have been unfavorable to [Defendants]." [Doc. 21 at 8; *see id.* at 15–16.] An adverse-inference jury instruction may be an appropriate sanction for spoliation if it serves the purposes of "leveling the evidentiary playing field" and "sanctioning the improper conduct." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). In *Vodusek*, the Fourth Circuit held that the district court acted within its discretion when, "[r]ather than deciding the spoliation issue itself, [it] provided the jury with appropriate

guidelines for evaluating the evidence."[2]  *Id.* at 157.  The Court concludes that the same type of jury instruction, providing guidelines to the jury for evaluating the evidence, is appropriate in this case.[3]

Plaintiff also requests an award of attorney's fees incurred in connection with this motion.  [Doc. 21 at 16.]  "Sanctions that a federal court may impose for spoliation include

---

[2] Specifically, the district court instructed the jury that, if it found that the plaintiff's counsel and agents failed to fulfill their duty to preserve evidence, it could take that failure into account when considering the credibility of the plaintiff's expert and his opinions and, if it felt justified in doing so, assume that evidence made unavailable to the defendants by acts of the plaintiff's counsel or agents would have been unfavorable to the plaintiff's theory in the case.  *Vodusek*, 71 F.3d at 155.

[3] The Honorable David C. Norton has recognized the inconsistency between the Court's determining that sanctionable spoliation has occurred and then allowing a jury to redecide the spoliation issue.  *Nucor Corp. v. Bell*, 251 F.R.D. 191, 203 (D.S.C. 2008).  Nonetheless, as Judge Norton noted, case law supports that outcome.  *Id.* (citing *Vodusek*, 71 F.3d 148; *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004)).  The Court notes that, here, Reed's level of culpability is a closer call than in some of the cases where courts have allowed the spoliating party to re-argue the spoliation issue before the jury.  As noted, Reed had never received an evidence preservation letter before.  [Doc. 35-2 at 9 (183:17–19).]  The first paragraph of the Preservation Letter directs Reed Ice to "[p]lease pass a copy of this letter to your liability insurance carrier," and Reed informed his insurance agent about the letter as directed.  [Docs. 21-1 at 1; 35-2 at 6 (178:4–10).]  Reed testified that he did not understand that he and Reed Ice were under a duty to preserve the truck until he later spoke to an attorney.  [Doc. 35-2 at 2–3 (171:19–172:4).]  Although it was undoubtedly Reed's intentional decision not to read the entire Preservation Letter that contributed to his purported lack of understanding about his duty to preserve the truck and, therefore, to the spoliation at issue, this is not a case where the evidence supports a finding that Reed took active steps to cause the spoliation.  *See, e.g.*, *Vodusek*, 71 F.3d at 155 (noting that the district court explained that the plaintiff's two sons and expert witness "'virtually attacked the boat with a chain saw and sledge hammer,'" "'literally ripp[ing] apart'" the portion of the boat that was critical to the expert witness's theory and violating the integrity of the structure); *Nucor*, 251 F.R.D. at 196–99 (concluding that a defendant intentionally destroyed a thumb drive in bad faith and intentionally continued to use and install and uninstall programs on a laptop that was relevant to the litigation, resulting in the alteration or loss of data).  Accordingly, in line with how other cases have handled this issue, the Court will provide guidelines to the jury to allow it to weigh the evidence and decide the spoliation issue.  The Court will determine the specific language for the instruction once the Court knows what evidence the parties have introduced at trial.

assessing attorney's fees and costs . . . ."  *Choice v. Thyssen Krupp Indus. Servs.*, No. 6:13-479-TMC-KFM, 2014 WL 2613170, at *5 (D.S.C. June 10, 2014) (internal quotation marks omitted).  Given that the reasons for imposing sanctions include "leveling the evidentiary playing field" and "sanctioning the improper conduct," *id.* at *2 (internal quotation marks omitted), and that Plaintiff incurred attorney's fees in bringing this motion, the Court concludes that an award of attorney's fees associated with the spoliation sanctions motion is appropriate.

**Plaintiff's Motion for Sanctions for Discovery Misconduct**

Plaintiff filed the motion for sanctions for discovery misconduct on September 11, 2025.  [Doc. 38.]  Plaintiff contends that he is entitled to sanctions based on Defendants' discovery responses directly contradicting their sworn deposition testimony and based on Defendants' engaging in discovery abuse.  [*Id.*]  He asks the Court to award him reasonable attorney's fees and costs incurred in bringing the motion, investigating the discovery inconsistencies, and remedying the prejudices caused by Defendants' purported misconduct.  [*Id.*]  Defendants filed a response in opposition to the motion, and Plaintiff filed a reply.  [Docs. 40; 41.]  Having reviewed the filings, the Court denies without prejudice the discovery misconduct sanctions motion for failure to comply with Local Civil Rule 7.02, which requires that, absent exemptions not relevant here, "all motions shall contain an affirmation by the movant's counsel that prior to filing the motion he or she conferred or attempted to confer with opposing counsel and attempted in good faith to resolve the matter contained in the motion."  Local Civ. Rule 7.02 (D.S.C.); *Renshaw v. First Protective Ins.*, No. 2:24-cv-01410-RMG, 2024 WL 4812747, at *1 (D.S.C. Aug. 2, 2024) (denying, with leave to refile if necessary, a motion to compel for failure to comply

7

with Local Civil Rule 7.02 and noting that this rule was adopted to have parties attempt to agree to an appropriate resolution of a nondispositive motion before filing the motion). The Court encourages the parties to attempt to resolve this issue before filing another motion.

**Defendants' Motion to Amend the Second Amended Scheduling Order**

On January 7, 2026, Defendants filed a motion to extend the deadlines in the Second Amended Scheduling Order. [Doc. 50.] Defendants outlined what discovery has been completed and what discovery remains to be completed, specifically noting the time spent addressing motions in this case and issues that have arisen in scheduling certain depositions. [*Id.*] Plaintiff filed a response in opposition to Defendants' motion, and Defendants filed a reply. [Docs. 51; 52.] Having reviewing the record in this case, the Court finds good cause to grant the motion to amend the Second Amended Scheduling Order, Fed. R. Civ. P. 16(b)(4), which reopens discovery to allow the parties to complete the remaining discovery outlined in Defendants' motion, and will issue a Third Amended Conference and Scheduling Order to govern the remaining deadlines in this case.

**Defendants' Motions for Summary Judgment and to Bifurcate**

On February 2, 2026, Defendants filed a motion for summary judgment and a motion to bifurcate. [Docs. 54; 55.] Plaintiff filed responses in opposition to the motions, and Defendants filed a reply in support of their motion for summary judgment. [Docs. 56; 57; 58.] Because the Court is reopening discovery and issuing a new scheduling order to govern the remaining deadlines in this case, the Court denies without prejudice as premature Defendants' motions for summary judgment and to bifurcate. The parties are reminded that any motions for summary judgment that may be filed in this case shall

8

comply with the undersigned's Rule 56 Summary Judgment Motion Procedures, which can be found on the Court's website at https://www.scd.uscourts.gov/Forms/Scheduling_Orders/Austin_Rule_56.docx.  Moreover, any request to bifurcate the liability and damages phases at trial need not be filed until a trial is scheduled and the Court sets deadlines for trial-related motions.

**Plaintiff's Motion to Expedite**

On April 13, 2026, Plaintiff filed a letter on the docket as a "motion to expedite." [Doc. 61.]  Plaintiff also sent the letter to the Court via electronic mail and certified mail. Defendants filed a response in opposition to the motion to expedite.  [Doc. 64.]  Because the Court is reopening discovery and issuing a new scheduling order to govern the remaining deadlines in this case, the Court denies Plaintiff's motion to expedite. Additionally, the Court reiterates that this case is not yet ready for trial because discovery remains to be conducted and any motions for summary judgment will need to be ruled on before a trial date will be set.

**Admonition to the Parties**

The Court notes that the parties have involved the Court in issues that the Court expects the parties to be able to resolve without Court intervention.  For example, as noted, Plaintiff filed the motion for sanctions for discovery misconduct without certifying that the parties had conferred and attempted to resolve the matter as required by Local Civil Rule 7.02, D.S.C.  Additionally, although Plaintiff argues that Reed's deposition testimony directly contradicts Defendants' prior discovery responses [Doc. 38], a review of the record shows that Reed testified that his understanding regarding the Preservation Letter changed at some point between the time he received the letter and the time he was

deposed [*see* Docs. 35-2 at 4 (176:7–10) (Reed's testimony, in response to the question, "And did you understand this letter back in -- back on July 12, 2024?" that he did not understand it like he did at the time of his deposition) 38-4 at 2 (200:9–12) (Reed's testimony, "I admit it now, yes," in response to the request, "Admit that Reed Ice understood Exhibit A required preservation of the specific truck involved in the incident")]. But nothing establishes *when* Reed's understanding changed to establish that the discovery responses were inaccurate at the time they were completed.  However, the Court shares Plaintiff's concern to the extent Defendants' counsel failed to consult with Reed before responding to Plaintiff's discovery requests.  Even so, because discovery was in the early stages at the time Defendants responded to Plaintiff's requests for admission and because discovery requests may be amended and supplemented, the Court believes the issues raised in Plaintiff's motion for sanctions for discovery misconduct could have been resolved without Court involvement.  Indeed, as noted, the Local Civil Rules require parties to attempt to resolve discovery disputes before filing a motion.  Likewise, the Court believes the parties could have agreed on an amended scheduling order and avoided the Court's involvement on that issue as well as avoided Defendants' premature motions for summary judgment and to bifurcate.  It seems to the Court that, rather than working together to advance this case, the parties have resorted to unnecessary motions practice.  The Court strongly urges the parties to attempt to resolve these sorts of issues without Court intervention moving forward.

Additionally, the Court informs the parties that, because of the current caseload and trial roster, the undersigned is unable to schedule any additional trials until at least January 2027, even for cases that are currently ready for trial.  To the extent the parties

10

wish to expedite this matter, they may consent to have this case referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(c) for the remaining proceedings, including trial, which could allow a significantly earlier trial date.  Ultimately, the decision of whether to consent to referral of a case to a magistrate judge is up to the parties, who may withhold consent without any adverse consequences, but the Court reminds the parties of this option given Plaintiff's stated desire to expedite the case.  The appropriate consent form can be found on the Court's website.

### CONCLUSION

Based on the foregoing, Plaintiff's motion for sanctions for spoliation of evidence [Doc. 21] is GRANTED IN PART; Plaintiff's motion for sanctions for discovery misconduct [Doc. 38] is DENIED without prejudice; Defendants' motion to amend the Second Amended Scheduling Order [Doc. 50] is GRANTED; Defendant's motion for summary judgment [Doc. 54] is DENIED without prejudice; Defendants' motion to bifurcate [Doc. 55] is DENIED without prejudice; and Plaintiff's motion to expedite [Doc. 61] is DENIED.  As sanctions for spoliation, the Court will provide a jury instruction at the trial in this matter and award attorney's fees to Plaintiff for filing the motion for sanctions for spoliation of evidence.  Accordingly, Plaintiff is directed to file a petition for attorney's fees associated with the filing of the motion for sanctions for spoliation by May 22, 2026.  Any response to Plaintiff's petition for attorney's fees shall be filed by May 29, 2026.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

May 13, 2026
Greenville, South Carolina

11